UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH BAILEY,<br><br>      Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | Case No. EDCV 09-1437-RC<br><br>OPINION AND ORDER |

Plaintiff Keith Bailey filed a complaint on August 5, 2009, seeking review of the Commissioner's decision denying his applications for disability benefits. On December 22, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on February 8, 2010.

**BACKGROUND**

On May 4, 2006, plaintiff, who was born on March 26, 1979, applied for disability benefits under both Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, claiming an inability to work since April 1, 2002, due to testicular pain and mental

problems. A.R. 61-68, 88. The plaintiff's applications were initially denied on September 29, 2006, and were again denied on March 16, 2007, following reconsideration. A.R. 41-56. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Thomas J. Gaye ("the ALJ") on January 16, 2009. A.R. 18-40, 59. On February 10, 2009, the ALJ issued a decision finding plaintiff is not disabled. A.R. 6-17. The plaintiff appealed this decision to the Appeals Council, which denied review on June 9, 2009. A.R. 1-4.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since his alleged onset date. (Step One). The ALJ then found plaintiff has the following severe impairments: "epididymitis, dysthymic disorder, depressive disorder not otherwise specified and substance abuse"[2]

---

[1] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

[2] In determining plaintiff has a dysthymic disorder, the ALJ found plaintiff has "mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence

1  (Step Two); however, he does not have an impairment or combination of
2  impairments that meets or equals a listed impairment. (Step Three).
3  The ALJ next determined plaintiff is capable of performing his past
4  relevant work as a laborer and house cleaner; therefore, he is not
5  disabled. (Step Four).

**II**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Here, the ALJ found plaintiff has the RFC to perform limited medium work,[3] as follows:

> he is able to perform postural activities on a frequent basis. [He] is able to perform moderately complex tasks involving up to 5-6 step instructions, he is able to have occasional, non-intense contact with co-workers, supervisors and the public and he is precluded from work involving hypervigilance.

A.R. 12-13. However, plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly

---

and pace; and no episodes of decompensation." A.R. 12.

[3] Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

1 consider the opinion of Dr. Allison, a nonexamining psychiatrist, and
2 lay witness testimony.

### A. Nonexamining Physician's Opinion:

On April 21, 2005, plaintiff was seen at the Riverside County Department of Mental Health ("DMH") by a licensed clinical social worker, John Lane, LCSW, A.R. 251-54, and plaintiff contends the ALJ erred in not considering Mr. Lane's opinion. Jt. Stip. at 10:26-12:21, 16:25-17:5. However, since J. Allison, M.D., subsequently, on May 21, 2005, co-signed Mr. Lane's assessment, this Court considers the assessment to be Dr. Allison's,[4] rather than Mr. Lane's, who, as a social worker, "is not considered an 'acceptable medical source[]' under the regulations." Turner v. Comm'r, Soc. Sec., __ F.3d __, 2010 WL 2991383, *4 (9th Cir. (Or.)). Accordingly, the record shows that Dr. Allison, a nonexamining physician, diagnosed plaintiff as having an unspecified mood disorder and an unspecified psychotic disorder, rule out major depression with psychotic features, cannabis dependency, amphetamine abuse and antisocial personality disorder, and determined plaintiff's Global Assessment of Functioning ("GAF") was 50.[5] A.R. 251-54. When Mr. Lane interviewed plaintiff, plaintiff complained of chronic pain in his groin, which caused him to be

---

[4] Since Dr. Allison never examined plaintiff, A.R. 250, Dr. Allison is a nonexamining physician.

[5] A GAF of 50 means the individual exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

depressed and to have moderate suicidal ideations. A.R. 252. Plaintiff also reported that he "hear[d] voices on & off" since he was 21 years old "telling him to hurt [him]self[,]" and he had paranoid ideations. Id. Plaintiff's appearance, orientation, attention/ concentration, psychomotor skills, speech and thought content were intact, his memory was intact, his judgment and insight were fair, his mood was depressed, he was labile, his intelligence was below average, and he did not have a grave disability. A.R. 253.

"The Commissioner may reject the opinions of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). Here, however, the ALJ did **not** reject Dr. Allison's opinions, but instead incorporated them into his assessment of plaintiff. A.R. 14-15. Nevertheless, plaintiff contends the ALJ's assessment is not supported by substantial evidence.[6] There is no merit to plaintiff's claim. Simply put, "[t]he mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); see also Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("The mere diagnosis of [an ailment] . . . says nothing about the severity of the condition.").

---

[6] To support this argument, plaintiff improperly points to: signs and symptoms not found by Dr. Allison or any other physician, see Jt. Stip. at 2-6; "possible" symptoms of the various diagnoses Dr. Allison made, see Jt. Stip. at 11:8-12:7; and findings unsupported by the medical record. See Jt. Stip. at 12:2-7.

7

Further, to the extent plaintiff contends the ALJ erred in not properly considering plaintiff's GAF score, plaintiff is incorrect. An ALJ is not required to give controlling weight to a treating physician's GAF score -- let alone a nonexamining physician's GAF score. See, e.g., Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."). Moreover, since the ALJ did consider Dr. Allison's opinions, including the GAF score, as part of his overall assessment of plaintiff, A.R. 14-15, there was no error. Valentine, 574 F.3d at 691; Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009). To the contrary, the ALJ's assessment of plaintiff's mental limitations was supported by substantial evidence, including the opinions of examining psychiatrist Romualdo R. Rodriguez, M.D., A.R. 362-68, medical expert David Glassmire, M.D., A.R. 22-25, and nonexamining psychiatrist K.D. Gregg, M.D. A.R. 370-80; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support ALJ's disability determination).

**B.  Lay Witness Testimony:**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

1  determines to disregard such testimony and gives reasons germane to
2  each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th
3  Cir. 2001); Valentine, 574 F.3d at 694.  Thus, third party statements
4  are competent evidence, and "an important source of information about
5  a claimant's impairments[.]"  Regennitter v. Comm'r of the Soc. Sec.
6  Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Schneider v. Comm'r of
7  the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000); see also
8  Smolen, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the
9  claimant every day is of particular value. . . .").

   Plaintiff contends the ALJ erred in rejecting the third-party reports of his girlfriend, Tylena Ramirez, and another friend, Shanna Ramirez.[7]  Jt. Stip. at 6:18-9:6, 10:13-22.  On July 17, 2006, Tylena completed a report about plaintiff, indicating he is able to take care of himself, but he does not sleep very much because he has groin pain, he cannot stand long enough to cook or shop and he does not do chores because of his injury; rather, he watches television all day everyday and talks on the phone or visits with people about 3 times a week. A.R. 97-104.  Tylena also noted plaintiff cannot lift any weight or play any sports, walking hurts him, he cannot walk more than a couple of steps before having to stop and rest, and he needs a cane.  A.R. 102-03.  Furthermore, Tylena indicated plaintiff is able to pay attention all day, gets along well with authority figures, handles changes in routine very well, and has no unusual behavior or fear, but he does not understand written instructions and does not handle stress well.  Id.

---

[7] Since both lay witnesses have the same last name, the Court refers to them by their first names.

9

1     On February 18, 2007, Shanna completed a report about plaintiff,
2 stating she sees him about three times a week, and he is in pain and
3 mostly just stays inside and watches television or plays video games.
4 A.R. 131-38.  Shanna also noted plaintiff cannot lift things because
5 it causes him pain, he cannot stand, walk, talk or climb for long
6 periods of time, he uses a cane, and his memory is bad; however, he
7 can pay attention unless his pain is very bad.  A.R. 133, 137.  Shanna
8 further indicated that because of his pain, it is hard for plaintiff
9 to get dressed or use the bathroom, he does not cook or do household
10 chores, and he experiences pain when the water hits his side while he
11 is bathing, so plaintiff will not bathe for weeks.  A.R. 134-36.
12 Finally, Shanna also stated plaintiff gets along fine with authority
13 figures, but does not handle stress well.  A.R. 137.

15     To the extent the statements of Tylena and Shanna conflict with
16 the ALJ's RFC assessment, the ALJ rejected the statements as
17 unsupported by the record.  A.R. 15.  The ALJ also found that although
18 Tylena and Shanna "reported that [plaintiff's] activities were
19 limited, Dr. Rodriguez noted that [plaintiff] stated that he was able
20 to perform some household chores, do yard and gardening work, cook, go
21 to the store, run errands, care for his personal hygiene, watch
22 television, read and leave home alone."  Id.  Since the ALJ's findings
23 are supported by substantial evidence in the record, see, e.g., A.R.
24 353-58, 362-68, 382-86, the ALJ provided germane reasons for rejecting
25 Tylena's and Shanna's opinions.  Carmickle v. Comm'r, Soc. Sec.
26 Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Bayliss v. Barnhart, 427
27 F.3d 1211, 1218 (9th Cir. 2005).
28 //

**III**

"At Step Four, claimants have the burden of showing that they can no longer perform their past relevant work." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). "To determine whether a claimant has the [RFC] to perform his past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with his present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986); Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845.

Here, the ALJ found plaintiff can perform his past relevant work as a laborer and house cleaner. A.R. 16. However, plaintiff contends this finding is not supported by substantial evidence because the ALJ did not make specific findings regarding the mental and physical demands of plaintiff's past relevant work. Jt. Stip. at 2:28-5:9, 6:12-17. The plaintiff is incorrect. Vocational expert Troy Scott testified at the administrative hearing that an individual of plaintiff's age, education, RFC, and past work experience could perform plaintiff's former work as a laborer and house cleaner. A.R. 38-39. Plaintiff has not identified any errors in this testimony, which, as the ALJ found, is consistent with the Dictionary of Occupational Titles ("DOT"),[8] A.R. 16; see U.S. Dep't of Labor,

---

[8] The DOT is the Commissioner's primary source of reliable vocational information. Johnson v. Shalala, 60 F.3d 1428, 1434

11

1  Dictionary of Occupational Titles, 248, 947 (4th ed. 1991), and the
2  vocational expert's testimony constitutes substantial evidence to
3  support the ALJ's Step Four determination that plaintiff can perform
4  his past relevant work.⁹ Roberts, 66 F.3d at 184; Tylitzki v.
5  Shalala, 999 F.2d 1411, 1415 (9th Cir. 1993); see also Fleming v.
6  Astrue, 274 Fed. Appx. 571, 573 (9th Cir. 2008) ("The ALJ
7  appropriately relied on the Dictionary of Occupational Titles . . . to
8  determine that [claimant] could perform [his] past relevant work as it
9  is generally performed in the national economy."). Therefore,
10 plaintiff has not met his burden of proving he is unable to perform
11 his past relevant work. Sanchez v. Secretary of Health & Human
12 Servs., 812 F.2d 509, 511 (9th Cir. 1987).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  August 24, 2010          /S/ ROSALYN M. CHAPMAN
                                    ROSALYN M. CHAPMAN

---

n.6 (9th Cir. 1995); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

⁹ This case is distinguishable from *Pinto*, in which the ALJ relied on the testimony of a vocational expert to conclude a claimant could perform her past relevant work even though the evidence showed the claimant could not perform at her past relevant work as actually performed, the vocational expert's testimony contradicted the DOT, and the ALJ failed to considered the claimant's illiteracy in determining she could perform her past relevant work. Pinto, 249 F.3d at 845-47.

R&R-MDO\09-1437.mdo - 8/24/10

```
                                    UNITED STATES MAGISTRATE JUDGE
```